UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WAYNE PALMORE

VERSUS

TRAVIS DAY, ET AL.

CIVIL ACTION

NO. 25-2471

SECTION "D"(1)

## REPORT AND RECOMMENDATION

Plaintiff, Wayne Palmore, a Louisiana inmate, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983. Palmore sued Warden Travis Day and Nurse Russell Freeman.[1]

In his complaint, Palmore sets forth eight incidents that occurred between April 16, 2025, and May 28, 2025. Palmore first alleges that on the morning of April 16, 2025, he noticed a clear-like gel substance on his food that he mistook for fat.[2] He began experiencing symptoms consistent with high blood pressure.[3] He took a dose of medication, and his blood pressure initially lowered.[4] The symptoms returned, so he took another dose of the medication.[5]

More than twelve hours later, sometime between 6:00 p.m. and 11:00 p.m., he made a self-declared emergency request for medical care with Sergeant McKinney and Nurse Freeman.[6] Palmore claims that Nurse Freeman told him that he should have made the request during the day and walked off despite Palmore telling Freeman he was experiencing symptoms consistent with high blood pressure.[7]

---

[1] Rec. Doc. 6.
[2] Id. at 7.
[3] Id.
[4] Id.
[5] Id.
[6] Id.
[7] Id.

On April 18, 2025, Palmore again noticed something about the texture of his food.[8] About an hour after eating, he experienced a headache.[9] At approximately 11:00 p.m., Palmore began experiencing other symptoms of high blood pressure.[10]

On April 28, 2025, Palmore received a receipt for a withdrawal form he used to send a letter to the FBI on April 27, 2025.[11]

On May 8, 2025, Palmore was moving to another tier when he observed that his property was no longer in a locker.[12] An officer informed him that the officer and a lieutenant moved Palmore's belongings to a plastic container.[13] When Palmore arrived at his new cell and looked through his belongings, he noticed some of his paperwork was missing.[14] Also on that date, Palmore discovered that Sergeant Dillon had placed a piece of wood rapped in white cloth in his new locker.[15] Palmore broke up the wood and flushed it.[16]

On May 20, 2025, Palmore mailed two letters, one to the President of the United States and one to the FBI Director.[17] Both letters were accompanied by withdrawal forms.[18] He received only one withdrawal receipt and was charged $1.38.[19]

On May 28, 2025, Palmore mailed two letters, one to the President of the United States and one to the FBI Director.[20] He did not receive receipts for either withdrawal form.[21]

---

[8] Id. at 9, 15.
[9] Id.
[10] Id.
[11] Id. at 10.
[12] Id. at 8, 11.
[13] Id.
[14] Id.
[15] Id. at 10, 17.
[16] Id.
[17] Id. at 8, 13.
[18] Id.
[19] Id.
[20] Id. at 9, 12.
[21] Id.

Palmore also claims that some of his administrative grievances related to these events were never processed.[22] He seeks monetary relief.[23]

To better understand Palmore's claims and allow him an opportunity to state his best case, the Court held a Spears hearing in this matter on March 3, 2026. See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Wilson v. Barientos, 926 F.2d 480, 482 (5th Cir. 1991). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication  more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).  Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

Palmore testified the he intended to sue Warden Day in his official capacity. He admitted that he could not confirm that Warden Day was involved in any of the incidents alleged in his complaint, but claimed that he had notified him of prior incidents leading up to the incidents alleged in the complaint. Palmore testified that Day had never assaulted him or done anything to him personally. He, however, claimed that Day had received Palmore's administrative grievances related to prior incidents.

Palmore testified that he intended to sue Nurse Freeman is his official capacity. He explained that on the morning of April 16, 2025, he noticed a clear gel in his food that he mistook as fat. Hours after eating, he experienced a headache. Between third chow and shift change, he began experiencing tunnel vision, seeing "spots of light," and felt an increase in his heart rate.  He requested a self-declared emergency and told Nurse Freeman of his symptoms. Nurse Freeman told him that he should have made a request for medical care during day shift and walked off.

---

[22] Id. at 3.
[23] Id. at 5.

Palmore, who is 34 years old, explained that he was diagnosed with high blood pressure approximately ten years ago and that it is generally well-controlled on medications. He explained that his prescribed medications are "KOP," meaning "Keep on Person" and are readily available to him. According to Palmore, he usually is provided a two-month supply of the medications and, while he was directed to take the medications in the morning, he takes them at night.

Palmore testified that, at the time of the events on April 16, 2025, he had been prescribed two medications, Norvasc and HCTZ (Hydrochlorothiazide). He explained that, after he began experiencing symptoms, he took an extra dose of medication, which initially provided relief. When the symptoms returned, he took another dose, and "it got under control." He confirmed that the symptoms resolved, and "that was the end of it." Palmore testified that he had never experienced the symptoms of a high blood pressure spike until the April 16, 2025, incident. He explained that he was familiar with some of the symptoms because he had been informed of the symptoms of high blood pressure at the time of his diagnosis. Palmore testified that, sometime after the incident, he was prescribed a third medication, Losartan.

Palmore stated that he never determined what the gelatin substance was and had no guess as to what the contaminant might be. He admitted that no one else saw it.

On April 18, 2025, Palmore suffered a similar episode after eating a meal. He again experienced headache, tunnel vision, and spotty vision. He speculated that the food did not have "too much" contaminant in it because, on that occasion, he took a supplemental dose of his medication and "got it under control." He did not request medical treatment on that occasion.

Palmore speculated that unidentified officers use inmates to do their "dirty work" for them. He claimed that "they be sending hits on inmates." He testified that, at the time of these incidents, he did not know the other inmates on the floor, and he did not have any problems with them. He speculated

4

that other inmates had gotten his medical information from an officer or nurse, although he did not know who would provide such information. He further speculated that other inmates had perhaps put something in his food at the bidding of officers.

On April 27, 2025, Palmore wrote a letter to the FBI. He explained that the basis of the letter was to inform the FBI Director of his belief that, based on the two food incidents, the correctional center's administration was trying to kill him. He submitted a withdrawal form with the letter for the postage cost. He explained that a withdrawal form is used to buy postage or items at commissary and that the necessary money is drawn from his prison account to pay for the items. He received the withdrawal form receipt the following day indicating that he was charged for the postage. Palmore speculated that the signature on the form was forged. He did not know whether the letter was actually mailed. He did not receive a response to the letter.

On May 20, 2025, Palmore attempted to send two one-page letters to the President of the United States and the Director of the FBI, again claiming that the administration was trying to kill him. Palmore explained that he received only one of the two withdrawal form receipts and that the receipt related to the letter to the President indicated that he had been double charged. Based on the non-receipt of a withdrawal form receipt related to the FBI letter, Palmore speculated that the letter had not been mailed. Palmore agreed that it was possible that the postage for both letters was placed on a singular receipt. He speculated that someone opened the other letter and could not send it out. He complained that, in the past, other letters have been sent back to him and that he has been told he can purchase stamps himself at the canteen. He did not receive a response to either letter. Palmore could not identify who he believes is refusing to mail his letters.

Palmore testified that on May 8, 2025, Sergeant Dillon gave him an empty locker. Palmore, under Dillon's watch, took his things from a plastic tote and placed them in the metal locker. Palmore

locked the locker and took it to his new cell. When he opened it again, he noticed "a piece of wood wrapped in cloth as if it were a knife." Palmore broke up the wood and flushed it down the toilet. He testified that he had no personal "beef" with Dillon. He admitted that he was not written up for possessing contraband. Palmore wrote an administrative grievance, but claimed it was never filed.

Palmore estimated that he has filed nine administrative grievances in the nearly ten years he has been incarcerated at Rayburn Correctional Center. He claimed that a few of his grievances "disappeared."

## I. Mandatory Screening

Federal law requires that this matter be screened. For example, with respect to actions, such as this one, which are filed *in forma pauperis*, federal law mandates:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i)      is frivolous or malicious;
> (ii)     fails to state a claim on which relief may be granted; or
> (iii)    seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In addition, because Palmore is incarcerated, screening is also required by 28 U.S.C. § 1915A. That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)      is frivolous, malicious, or fails to state a claim upon which relief  may be granted; or

(2)     seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A claim is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). When making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (footnote, citation, and quotation marks omitted). The United States Supreme Court has held:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Palmore filed this action under 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

7

action at law, suit in equity, or other proper proceedings for redress....

42 U.S.C. § 1983.

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254–57 (1978)). Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability." Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;

(2) that occurred under color of state law; and

(3) was caused by a state actor.

Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

To hold a defendant personally liable under § 1983, a plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the [defendant] and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1115 (5th Cir. 2006).

## II.    Analysis

For the following reasons, even after liberally construing the complaint[24] and his Spears testimony, Palmore's § 1983 claims are frivolous and/or fail to state a claim.

---

[24] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

8

### A. Warden Day

While Palmore named Warden Day Travis as a defendant, he made no allegations against him in the complaint.[25] Furthermore, at the <u>Spears</u> hearing, Palmore admitted that Warden Day was not personally involved in any of the incidents alleged and had not personally done anything to him.

The United States Fifth Circuit Court of Appeals, however, has held: "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." <u>Oliver v. Scott</u>, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Moreover, "[p]ersonal involvement is an essential element of a civil rights cause of action," <u>Thompson v. Steele</u>, 709 F.2d 381, 382 (5th Cir. 1983), and such involvement must be specifically alleged. Without allegations of personal involvement, Palmore fails to state a claim against Warden Day in his individual capacity.

Nor may Warden Day be held responsible under a theory of *respondeat superior* under § 1983, based on a claim that prison personnel under his supervision caused Palmore injury. <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996); <u>accord</u> <u>Field v. Corr. Corp. of Am. Inc.</u>, 364 F. App'x 927, 929 (5th Cir. 2010). A supervisory official may be held liable for his subordinates' actions in his official capacity under § 1983 only if the official implemented an unconstitutional policy that causally resulted in the injury. <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691-95 (1978); <u>Thompson v. Johnson</u>, 348 F. App'x 919, 921 (5th Cir. 2009) (citing <u>Mouille v. City of Live Oak</u>, 977 F.2d 924, 929 (5th Cir. 1992)).

Here, Palmore does not allege that an official policy resulted in his injury. Furthermore,

---

[25] Rec. Doc. 6.

9

Fifth Circuit jurisprudence dictates that Warden Day is not a policymaker. Guillot ex rel. T.A.G. v. Russell, 59 F.4th 743, 750 (5th Cir. 2023) ("Official-capacity suits may be brought only against an official acting as a policymaker, such that his decisions represent the official policy of the local government unit ... [and] [i]n Louisiana, the sheriff [not the warden] is the final policymaker.").

Accordingly, Palmore's § 1983 claims against Warden Day, whether in his official or individual capacity, should be dismissed.

### B. Nurse Freeman

Palmore alleges that Nurse Freeman ignored his request for medical treatment pursuant to a self-declared emergency on the night of April 16, 2025.

First, Palmore's claim against Nurse Freeman in his official capacity fails. "Official-capacity suits may be brought only against an official acting as a policymaker, such that his decisions represent the official policy of the local government unit." Guillot ex rel. T.A.G., 59 F.4th at 750. Here, Palmore fails to allege that Nurse Freeman has any policy-making authority. Nor does he allege that Freeman's decisions reflect official jail policy. Thus, the official-capacity claim must be dismissed. See Kimble v. Jefferson Par. Sheriff's Office, No. 22-30078, 2023 WL 1793876, at *3 (5th Cir. Feb. 7, 2023); Salazar v. U.T.M.B. C.M.C., No. 5:19-CV-124-BQ, 2020 WL 6556031, at *4 (N. D. Tex. Jan. 27, 2020), adopted, 2020 WL 5757491 (N. D. Tex. Sept. 28, 2020), appeal dismissed sub. nom., No. 21-10610, 2022 WL 31010697 (5th Cir. July 29, 2022).

To the extent that Palmore attempts to allege a deliberate indifference to medical needs claim against Nurse Freeman in his individual capacity, that claim fares no better. Deliberate indifference by prison personnel or medical staff to an inmate's serious medical needs constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104–05 (1976). "A serious medical need is one for which treatment has been

recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006); Lewis v. Evans, 440 F. App'x 263, 264 (5th Cir. 2011). A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Farmer v. Brennan, 511 U.S. 825, 847 (1994); see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); Washington v. LaPorte Cnty. Sheriff's Dep't, 306 F.3d 515 (7th Cir. 2002) (same). Deliberate indifference is manifested in the provider's intentional denial of medical care or intentional interference with the treatment once prescribed. Farmer, 511 U.S. at 847. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. Id. at 833.

> The United States Fifth Circuit Court of Appeals has explained that requirement:
>
> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (citations, quotation marks, and brackets omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not

constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." <u>Gobert</u>, 463 F.3d at 346. Instead, Palmore must establish that Freeman "refused to treat [him], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." <u>Brewster v. Dretke</u>, 587 F.3d 764, 770 (5th Cir. 2009) (quoting <u>Domino</u>, 239 F.3d at 756).

Here, Palmore's dissatisfaction with Freeman's response to Palmore's request for self-declared emergency medical care or his desire for different treatment does not support a claim of deliberate indifference to a serious medical need. Palmore fully admits that he had access to his high blood pressure medication, took an additional dose, and that his symptoms resolved and "that was the end of it." Palmore's mere disagreement with Freeman's level of care is not a basis for liability under the Eighth Amendment. <u>Gibson v. Collier</u>, 920 F.3d 212, 220 (5th Cir. 2019); <u>Gobert</u>, 463 F.3d at 346. Freeman's determination about the form of treatment or whether to provide treatment at all is "a classic example of a matter for medical judgment" that does not constitute deliberate indifference. <u>Estelle</u>, 429 U.S. at 107. Even assuming that Freeman could have exercised a different treatment plan or erred in his professional judgment, allegations of negligence or even malpractice are insufficient to establish deliberate indifference and do not state a constitutional violation. <u>Id.</u> at 106; <u>Gibson</u>, 920 F.3d at 219-20.

For these reasons, Palmore's claims against Nurse Freeman, in both his official and individual capacities, should be dismissed as frivolous and for failure to state a claim for which relief can be granted.

### C. Food Contamination/Tampering Incidents

Palmore complains that his food was tampered with on April 16 and 18, 2025, although he does not sue anyone in connection with this claim. He attributes his medical symptoms to the allegedly contaminated food.

The Fifth Circuit has held that in order to successfully plead a cause of action in civil rights cases, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir.1986). No defendants were named with respect to this claim, and no facts were developed setting forth any specific person's participation in this alleged wrong.

There is no need to allow Palmore an opportunity to amend his complaint, however, because, regardless, Palmore's claim of food tampering is wholly speculative and relies on nothing more than conclusory allegations. Palmore's personal belief that the food was contaminated and caused him to be sick is not sufficient to support a claim. Prescott v. Johnson, No. 6:18cv577, 2022 WL 672694, at *10–11 (E.D. Tex. March 7, 2022) (dismissing plaintiff's barebones allegation that he believed his food was contaminated on various occasions), aff'd, No. 22-40255, 2023 WL 3723632 (5th Cir. May 30, 2023); Lopez v. Wigly, No. 9:07cv308, 2008 WL 5158569, at *6 (E.D. Tex. Dec. 9. 2008) (speculative assertion of food tampering were not sufficient to state a claim); Cooper v. Bowles, 3:91-CV-2622-D, 1997 WL 361879, at *2 (N.D. Tex. June 20, 1997) (dismissing claim alleging food tampering where plaintiff alleged maladies but failed to state the nature of the tampering or provide any factual support to demonstrate food tampering actually occurred). Mere suspicion and speculation are insufficient to support a plausible claim. See, e.g., United States ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 266 (5th Cir. 2010) (to state a claim, "[t]he plaintiff's factual allegations must support a claim to relief that is plausible on its face

13

and rises above mere speculation").

According, Palmore's § 1983 claim alleging food tampering/contamination should be dismissed.

**D.  Mail**

Palmore alleges that an unknown person(s) tampered with his outgoing mail to the President of the United States and the Director of the FBI on April 27 or 28, May 20, and May 2028, 2025. While he conceded that he had received receipts on two of the three occasions demonstrating that he had been charged for postage, he questioned whether the letters were actually mailed.

A correctional institution's handling of inmate mail potentially implicates two constitutional rights: the right of access to the courts and the right to freedom of speech. Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993). Here, Palmore's claim does not implicate the right to access of courts as "the Supreme Court has not extended this right to encompass more than **the ability of an inmate to prepare and transmit a necessary legal document to a court**." Vaccaro v. United States, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted) (emphasis added); accord Manning v. Sumlin, 540 F. App'x 462, 463 (5th Cir. 2013) (citing Lewis v. Casey, 518 U.S. 343, 356 (1996); Brewer v. Wilkinson, 3 F.3d 816, 821 (5th Cir. 1993)). To state a claim that his constitutional right of access to the courts was violated, Palmore must demonstrate that **his position as a litigant was actually prejudiced**. Lewis, 518 U.S. at 348; Every v. Jindal, 413 F. App'x 725, 727 (5th Cir. 2011) (citing Lewis, 518 U.S. at 349-50); Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999).

In this case, Palmore's letters to the President of the United States and the Director of the FBI were not legal mail and did not implicate his constitutional right of access to the courts. Any

14

alleged interference related to those letters in no way prejudiced his position as a litigant in any court. Certainly, Palmore's access to this court has not been prejudiced in any way. Palmore was not hindered in filing his complaint or other documents in this case.

As for any claim that the alleged mail tampering violated his freedom of speech, " '[a] prison official's interference with a prisoner's legal mail ... may violate the prisoner's First Amendment right to free speech–i.e., the right to be free from unjustified governmental interference with communication.' " Damm v. Cooper, 288 F. App'x 130, 132 (5th Cir. 2008) (quoting Brewer, 3 F.3d at 820). Inmates retain a First Amendment right to be free from mail censorship not "reasonably related to legitimate penological interests." Schwarzer v. Wainwright, No. 19-41011, 2021 WL 6060002, at *1 (5th Cir. Dec. 17, 2021) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)); see Thornburgh v. Abbott, 490 U.S. 401, 409 (1989).

Here, Palmore makes purely speculative and conclusory accusations that an unknown person is interfering with his mail. While he questioned whether the letters had been sent, he admitted that he received forms indicating that he had been charged for postage on two of the three occasions alleged in the complaint. While Palmore did not receive a response to the letters, it is likely that the recipients – the President of the U.S. and the Director of the FBI - simply have no desire or need to respond to the letters. Therefore, Palmore's complaint and Spears testimony fail to state a cognizable § 1983 claim for violation of his First Amendment rights. Cheramie v. Webre, No. 21-1367, 2022 WL 1184029, at *3  (E.D. La. April 21, 2022) (claim that mail was tampered with was too speculative to state a plausible claim); Monterro Navas v. JPCC/Correct Health, No. 18-6846, 2019 WL 2397221, at * 13 (E.D. La. March 29, 2019) (finding claims of mail tampering legally frivolous where plaintiff speculated that his mail had not been sent because he never received a response), adopted, 2019 WL 2395541 (E.D. La. June 6, 2019); Thorton v. Tanner, No.

18-1198, 2018 WL 6920460, at *6–7 (E.D. La. Oct. 24, 2018), adopted, 2019 WL 77322 (E.D. La. Jan. 2, 2019); Nova v. Smith,  No. 9:19-CV-0072 (GTS/TWD), 2020 WL 13855601, at *5 (N.D.N.Y. Jan 30, 2020) (allegation that plaintiff was prevented from communicating with the outside world in violation of the First Amendment when he was provided with a fake mail receipt related to his letter to the FBI was insufficient to state a claim).

As such, Palmore's § 1983 claim related to his mail should be dismissed as frivolous and/or for failure to state a claim.

### E.  Lost Property on May 8, 2025

Palmore claims that, when he was relocated on May 8, 2025, some of his paperwork went missing. Palmore's loss of property claim is not actionable under § 1983 for the following reasons.

A state actor's negligence that results in an unintentional loss of property does not violate the Constitution because negligence is not actionable under § 1983. See Simmons v. Poppell, 837 F.2d 1243, 1244 (5th Cir. 1988) (per curiam); see also Marsh v. Jones, 53 F.3d 707, 712 (5th Cir. 1995) (concluding negligence is not actionable under § 1983). Further, an intentional deprivation of personal property likewise does not state a viable constitutional claim if the prisoner has access to an adequate post-deprivation state remedy. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Stauffer v. Gearhart, 741 F.3d 574, 583 (5th Cir. 2014) (per curiam) (citations omitted) ("An inmate's allegation that his personal property was lost, confiscated, or damaged does not state a claim under 42 U.S.C. § 1983, even when prison officials acted intentionally."). Louisiana law provides an inmate with an adequate post-deprivation remedy through its expansive tort laws. Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984); Bennett v. La. Dept. of Pub. Safety & Corrs., 61 F. App'x 919, 2003 WL 1109690, at *1 (5th Cir. 2003); Arnold v. Inmate Accounts, 48 F. App'x 105, 2002 WL 31017153, at *1 (5th Cir. 2002). Thus, Palmore's alleged deprivation of

16

personal property does not implicate constitutional due process concerns as state law provides an adequate post-deprivation remedy. Daniels v. Williams, 474 U.S. 327, 330–31 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."); Hudson v. Palmer, 468 U.S. 517 (1984) (intentional deprivations); Parratt v. Taylor, 451 U.S. 527 (1981) (unauthorized deprivations).

In short, an official's actions—whether negligent or intentional—that result in a loss of property give rise to a state tort action rather than a federal civil rights claim. Accordingly, this claim should be dismissed.

### F. May 8, 2025 Planted Contraband

Palmore claims that Sergeant Dillon planted contraband, specifically a piece of wood shaped like a knife, in his locker on May 8, 2025.

The Court can discern no retaliation claim based on Palmore's allegation. To prevail on a claim of retaliation, a prisoner must establish (1) the exercise of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. McDonald v. Steward, 132 F.3d 225, 2331 (5th Cir. 1998). The Fifth Circuit has explained that "[t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights." Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006) (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)). Courts must regard retaliation claims with caution, however, as "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."

Newsome v. Fairly, No. 1:17-cv-280-HSO-JCG, 2019 WL 2496663, at *7 (S.D. Miss. Jan. 28, 2019) (internal quotations omitted) (quoting Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)), adopted, 2019 WL 1128759 (S.D. Miss. March 12, 2019). Prisoners must establish retaliatory motive and that but for that motive, the retaliatory event would not have occurred. Id. (citing Cain v. Lane, 857 F.2d 1139, 1143 (7th Cir. 1988)).

In this case, Palmore's allegations fall short of anything more than barebone conclusory statements from which a plausible inference of retaliation cannot be made. "Mere conclusory allegations of retaliation are insufficient[,] ... a plaintiff must allege more than his personal belief that he has been the victim of retaliation." Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). Here, Palmore does not suggest in any way that Sergeant Dillon, who he has not named as an actual defendant in this lawsuit, was aware that Palmore had engaged in any protected conduct nor that Dillon planted contraband because Palmore was engaged in protected conduct. See Hale v. Williams, 390 F. App'x 351, 352 (5th Cir. 2010) (finding no triable issue concerning a retaliatory motive because the defendant "was not even aware of" the plaintiff's act for which he claimed defendant retaliated); Armenta v. Pryor, 377 F. App'x 413, 416 (5th Cir. 2010) (plaintiff failed to establish a chronology of events from which retaliation may plausibly be inferred where there was "no evidence that any of the Defendants were named in, or had any knowledge of, his prior grievances or his lawsuit."); Baughman v. Seale, 761 F. App'x 371, 382 (5th Cir. 2019); Mark v. Spears, No. 22-40104, 2023 WL 5316554, at *6 (5th Cir. Aug. 17, 2023). In fact, Palmore testified that he did not have any conflict with Sergeant Dillon prior to this incident.

Nor has Palmore stated a plausible due process claim. Palmore suffered no adverse action as a result of the alleged act. Palmore candidly admitted that he did not suffer any disciplinary action and was not punished in any way. Rollins v. Bond, No. 5:25-CV-P78-JHM, 2025 WL

2734655, at \*4 (W.D. Ken. Sept. 25, 2025); Adams v. Holt, 1:17-CV-465-TWT-JSA, 2017 WL 2664216, at \*2 (N.D. Ga. March 29, 2017) (plaintiff who alleged that a cell phone was planted in his property failed to state a due process claim where he did not receive any sanctions, "let alone sanctions that would pose an atypical and significant hardship on him in relation to the ordinary incidents of prison life."), adopted, 2017 WL 2653030 (N.D. Ga. June 20, 2017).

Accordingly, Palmore's § 1983 claim related to the alleged planting of contraband on May 8, 2025, should be dismissed.

### G. Claims Related to Administrative Grievances

Palmore claims that some of his administrative grievances were not answered or were lost. Palmore cannot succeed on this claim.

It is well-established that a prisoner has no protected liberty interest in either the adequacy or the result of prison administrative grievance procedures. Smith v. Horton, 670 F. App'x 872, 873 (5th Cir. 2016) (citing Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005); Eason v. Thaler, 73 F.3d 1322, 1325–26 (5th Cir. 1996)). The Fifth Circuit has held that a prisoner does not have a constitutionally protected interest in having his grievances resolved to his satisfaction. Bonneville v. Basse, 536 F. App'x 502, 503 (5th Cir. 2013) (citing Geiger, 404 F.3d at 374).

Therefore, Palmore's claim related to his administrative grievances should be dismissed as frivolous and/or for failure to state a claim.

### H. State Law Claims

Lastly, if Palmore intended to assert state law claims, the Court should decline to exercise supplemental jurisdiction to consider them in light of the fact that he has no valid federal claim. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction

19

over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); see also Jackson v. Mizzel, 361 F. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims."). If Palmore wishes to pursue claims under state law, he should do so in the state courts.

<u>**RECOMMENDATION**</u>

It is **RECOMMENDED** that Palmore's § 1983 claims be **DISMISSED WITH PREJUDICE** as frivolous and/or for failure to state a claim.

It is **FURTHER RECOMMENDED** that any state law claims be **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise supplemental jurisdiction over these claims.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 30th day of March, 2026.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

20